JUDGE COTE

07 CV 2871

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OFFICE DEPOT, INC. and
OCS ACQUISITION CORP.,

                                    Plaintiffs,

                    - against -

ROGER POST,

                                    Defendant.

**NOTICE OF
REMOVABLE**

APR 1 0 2007

U.S.D.C. S.D.N.Y.
CASHIERS

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446,

Defendant Roger Post ("Post"), through his attorneys Nixon Peabody LLP, hereby removes this

action to the United States District Court for the Southern District of New York. Defendant Post

respectfully states the following grounds for removing this action:

    1.    On or about March 12, 2007, Office Depot, Inc. and OCS Acquisition Corp.

("Plaintiffs"), filed their Complaint (the "Complaint") in the matter entitled *Office Depot, Inc.*

*and OCS Acquisition Corp. v. Roger Post*, Index No. 600779/07 (the "State Court Action") in

the Supreme Court of the State of New York, County of New York.

    2.    Post was served with a copy of the Complaint in the State Court Action on April

4, 2007. Pursuant to 28 U.S.C. § 1446(a), attached as Exhibit A is a copy of the process and the

Complaint received on that date, which together constitute all process, pleadings and orders

served upon Post in this action.

    3.    Defendant Post filed this Notice of Removal within thirty (30) days after receipt

of the State Court Action and, therefore, Post's removal is timely pursuant to 28 U.S.C. §

1446(b).

## Grounds for Removal

4.    This Court has original jurisdiction in the present action pursuant to 28 U.S.C. §
1332(a), which provides that "district courts shall have original jurisdiction of all civil actions
where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and
costs, and is between citizens of different states."

5.    Plaintiff Office Depot, Inc. is a Delaware corporation with its principal place of
business at 2200 Old Germantown Road, Delray Beach, Florida.  (Ex. A, Complaint ¶ 1).
Therefore, Plaintiff Office Depot, Inc. is a citizen of the States of Delaware and Florida.

6.    Plaintiff OCS Acquisition Corp. is a Delaware corporation with its principal place
of business at 2200 Old Germantown Road, Delray Beach, Florida.  (Ex. A, Complaint ¶ 2).
Therefore, Plaintiff OCS Acquisition Corp. is a citizen of the States of Delaware and Florida.

7.    Defendant Post is, and was at the time the Complaint was filed, an individual who
resides at 20 Georgetown Court, Basking Ridge, New Jersey.  Therefore, Post is a citizen of the
State of New Jersey.

8.    Accordingly, complete diversity exists in this case in that Plaintiffs are citizens of
Delaware and Florida and Post is a citizen of New Jersey.

9.    The amount in controversy exceeds $75,000, exclusive of interest and costs.
Plaintiffs assert a claim for breach of contract arising out of an agreement (the "Agreement")
with Post containing restrictive covenants concerning Post's post-Agreement employment, for
which Post "receiv[ed] over a million dollars in consideration."  (Exhibit A, Complaint ¶ 20).
Plaintiffs allege that they have suffered "substantial damages" as a result of Post's breach of the
Agreement, and seek monetary relief of "such damages, consequential damages, and/or

10512164.2

2

restitutionary damages, as well as attorneys' fees, costs, and other expenses . . . ." (Exhibit A,

Complaint ¶ 32).

10.    Where a complaint states the amount of damages, "there is a strong presumption

that the stated amount is the actual amount in controversy. Where no amount is specified . . .

courts examine the nature of the claims, factual allegations within the pleadings, and the record

outside the pleadings to determine the amount in controversy." *Burr v. Toyota Motor Credit

Co.*, No. 06 Civ. 7105 (SAS), 2006 U.S. Dist. LEXIS 79647, at *13 (S.D.N.Y. Nov. 1, 2006).

11.    Plaintiffs state that Post's purported breach of the Agreement "deprived plaintiffs

of the benefit of their bargain and substantially defeated the purpose of the . . . Agreement."

(Exhibit, A, Complaint ¶ 31). Because Plaintiffs state that Plaintiff Office Depot, Inc. paid over

$1 million in consideration for Post's entry into the Agreement and seek monetary damages for

the breach thereof, Plaintiffs have no viable basis for disputing that the amount in controversy

exceeds the $75,000 required for federal diversity jurisdiction.

12.    Plaintiffs also assert a claim for injunctive relief for Post's alleged violations of

the restrictive covenants by accepting employment at "W.B. Mason, a director competitor of . . .

Office Depot, Inc. in the office supplies market." (Exhibit A, Complaint ¶ 36).

13.    Where a plaintiff is seeking non-monetary relief, this Court should "endeavor to

quantify such relief" to determine if the amount in controversy is satisfied. *Concorde Fin. Corp.

v. Value Line, Inc.*, No. 03 Civ. 8020 (NRB), 2004 U.S. Dist. LEXIS 2040, at *6 (S.D.N.Y. Feb.

11, 2004); *see also Maxons Restorations, Inc. v. Newman*, 292 F. Supp. 2d 477, 483 (S.D.N.Y.

2003) (value of claim analysis for injunction for alleged violation of restrictive covenant

"requires consideration of 'the extent of the injury to be prevented' by enforcing the restrictive

covenant in the employment contract" and involves looking "not only at past losses but also at potential harm") (citations omitted).

14.    In support of their request for injunctive relief, Plaintiffs allege that Post is familiar with trade secrets and "other confidential information, and his services are of special, unique and extraordinary value." (Exhibit A, Complaint ¶ 38). Plaintiffs further allege that Post's breach "deprives Office Depot of the full benefit of he reputation or goodwill associated" with Post's former business. (Exhibit A, Complaint ¶ 39). Because Plaintiffs allege that they paid over $1 million in consideration for the Agreement with Post, it is clear that the Plaintiffs are alleging that the potential harm to them by Post's breach would far exceed $75,000. *See Maxons Restorations, Inc. v. Newman*, 292 F. Supp. 2d at 484 (noting that "[c]ommon sense mandates the conclusion that the potential harm to [plaintiff] inherent in [defendant's] employment" by a competitor supports establishment of the amount in controversy).

15.    In addition, Plaintiffs are seeking an order barring Post from working for WB Mason, where he makes more than $75,000 per year in compensation. If Plaintiffs are granted the relief they seek, Post will be deprived of more than $75,000 in income.

16.    Accordingly, the amount in controversy exceeds the sum of $75,000.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because the law State Court Action is pending in the Supreme Court of the State of New York, County of New York.

18.    Written notice of the filing of this Notice will promptly be given to Plaintiffs and, together with a copy of the Notice of Removal, will be filed with the Clerk of the New York County Supreme Court, as provided by 28 U.S.C. § 1446(d).

WHEREFORE, Defendant Roger Post respectfully removes the State Court Action currently pending in the Supreme Court of the State of New York, County of New York, to this Court and respectfully requests that this matter proceed in this Court as an action properly removed thereto.

Dated:  April 10, 2007
        New York, New York

                                        Respectfully submitted,

                                        NIXON PEABODY LLP

By:     _____

                                        Matthew T. McLaughlin (MM-7462)
                                        437 Madison Avenue
                                        New York, New York 10022
                                        Tel: (212) 940-3000
                                        Fax: (212) 940-3111
                                        *Attorneys for Defendant Roger Post*

10512164.2                          5

COMMERCIAL DIVISION
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| |
|---|
| OFFICE DEPOT, INC., and<br>OCS ACQUISITION CORP.<br><br>*Plaintiffs,*<br><br>- against -<br><br>ROGER POST<br><br>*Defendant.* |

Index No. 6C0779/2007

Purchased on: 03/12/2007

**SUMMONS**

**TO THE ABOVE-NAMED DEFENDANT:**

    **YOU ARE HEREBY SUMMONED** to answer the verified complaint in this action and to serve a copy of your answer on the plaintiffs' attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded therein.

    Plaintiff designates New York County as the venue for the this action. The basis for the venue is contractual agreement.

Dated: New York, New York
       March 12, 2007

                                 S. Robert Schrager
                                 **HODGSON RUSS LLP**
                                 60 East 42nd Street
                                 New York, New York 10165
                                 212-661-3535

                                 *and*

                                 **WILLIAMS & CONNOLLY LLP**
                                 725 12th Street, NW
                                 Washington, DC 20005
                                 (202) 434-5000

                                 *Attorneys for Plaintiffs*

NEW YORK
COUNTY CLERK'S OFFICE

MAR 12 2007

NOT COMPARED
WITH COPY FILED

000160/01C04 NYCDOCS2 419655v1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
COMMERCIAL DIVISION

---

| | |
|---|---|
| OFFICE DEPOT, INC., | ) |
| | ) |
| OCS ACQUISITION CORP. | )    COMPLAINT |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| ROGER POST | ) |
| | ) |
| | ) |
| Defendant. | ) |

---

Plaintiffs Office Depot, Inc. ("Office Depot") and OCS Acquisition Corp.

("OCS"), by their attorneys, Hodgson Russ LLP and Williams & Connolly LLP, state and allege

as follows for their Complaint in this action:

### The Parties

1.    Plaintiff Office Depot is a Delaware corporation with its principal place of

business at 2200 Old Germantown Road, Delray Beach, FL 33445.

2.    Plaintiff OCS is a Delaware corporation with its principal place of

business at 2200 Old Germantown Road, Delray Beach, FL 33445.

3.    Upon information and belief, Defendant Roger Post is a citizen of New

Jersey residing at 20 Georgetown Court, Basking Ridge, NJ 07920.

### Jurisdiction and Venue

4.    Jurisdiction and venue in this Court are proper.  The parties have

submitted to the jurisdiction of this Court and have waived any objections based on jurisdiction

or venue.  The Non-Competition, Confidentiality and Inventions Agreement of May 16, 2006

("Agreement" or "Post Agreement"), between Office Depot, OCS, and Post provides that "[e]ach

of the parties hereto agrees that all actions or proceedings arising out of or in connection with

this Agreement … shall be tried and determined exclusively in the state or federal courts in the

State of New York." Post Agreement ¶ 9.  The Agreement further provides that: "Each of the

parties hereto hereby expressly waives any right it may have to assert, and agrees not to assert,

by way of motion, as a defense, counterclaim or otherwise, in any such action or proceeding: (a)

any claim that it is not subject to personal jurisdiction in the aforesaid courts for any reason; (b)

that it or its property is exempt or immune from jurisdiction of any such court or from any legal

process commenced in such courts; and (c) that (i) any of the aforesaid courts is an inconvenient

or inappropriate forum for such action or proceeding, (ii) venue is not proper in any of the

aforesaid courts and (iii) this Agreement, or the subject matter hereof, may not be enforced in or

by any of the aforesaid courts." *Id.*

## FACTS

5.       Office Depot is engaged in the sale of office products and services in New

York and other locations around the world.

6.       On May 16, 2006, Office Depot acquired the business of AOS Acquisition

LLC f/k/a AOS Acquisition Corp. d/b/a Allied Office Products and/or Allied Office Supplies

("Allied") pursuant to a Stock Purchase Agreement ("SPA").  Specifically, pursuant to the SPA,

Office Depot acquired 100% of the stock of OCS, an entity specially created to hold the desired

assets and liabilities.

7.       Thereafter, also on May 16, 2006, Office Depot and OCS entered into a

Non-Competition, Confidentiality and Inventions Agreement with Post, a former shareholder and

2

executive officer of Allied. A true and correct copy of the Post Agreement is attached hereto as Exhibit 1.

8.      The Post Agreement was entered between the parties as an express "condition to [Office Depot's] willingness to enter into the SPA and in consideration of [Office Depot's] acquisition for value of all of [Post's] shares of capital stock of [Allied] pursuant to the SPA." Post Agreement at 1.

9.      In fact, Post is identified in Schedule 1.1(g) to the SPA as one of only nine "Key Stockholders."

10.      In consideration for Post's entry into the Post Agreement, on May 16, 2006, Office Depot paid Post approximately $900,000 for all his shares of capital stock in Allied.

11.      The $900,000 was in addition to $344,254.72 paid by Office Depot to Post (or by Office Depot to Allied for Post) for among other things, severance pay, an annual bonus, and certain Social Security, Medicare, Federal Unemployment Tax, State Unemployment Insurance, and COBRA payments. Post also may have received, or been entitled to receive, additional amounts in connection with Office Depot's acquisition of the business of Allied or Allied's provision of transition and/or consulting services to Office Depot.

12.      Post's Agreement contained covenants prohibiting him, among other things, from competing with Office Depot for a specified period of time; from disclosing trade secret and confidential information; from soliciting or inducing sales associates, sales managers or officers to leave the employ of Office Depot or any of its affiliates; and from soliciting or inducing customers to cease doing business with Office Depot or any of its affiliates.

13.      Post acknowledged in his Agreement that "because [he] has considerable knowledge, business contacts and expertise relating to [the business in which Allied engaged], if

3

[Post] were to compete with [Office Depot] or any of its Affiliates with respect to [the business in which Allied engaged], [Office Depot] would be deprived of the full benefit of any reputation or goodwill associated with the [Allied business]." Post Agreement at 1.

        14.    In his Agreement, Post also "acknowledge[d] that during the course of [his] employment with [Allied] he has become familiar with the trade secrets of the Company … and with other confidential information … and that [his] services have been and shall continue to be of special, unique and extraordinary value to" Office Depot. Post Agreement ¶ 1(a).

        15.    The Post Agreement provides that "in consideration of the payments to [Post] for the sale of [Allied] and [Office Depot's] offer of employment to [Post], [Post] agree[d] that, from the Effective Date [of May 16, 2006] until the date that is 18 months after the date [Post] cease[d] to be employed by [Allied] or [Office Depot] ("the Term"), he shall not directly or indirectly own any interest in, manage, control, participate in, consult with, render services for, or in any manner engage in any business in New York, New Jersey, Connecticut, Pennsylvania or California on behalf of or in concert with" certain competitors "or any other company which engages in a business that is competitive with the [business of Allied]." Post Agreement ¶ 1(a).

        16.    Post acknowledged in his Agreement that "he has carefully read and considered the provisions of this Section [prohibiting him from competing with Office Depot]… and, having done so, agrees and acknowledges that the covenants … contained herein (including but not limited to the time periods of restriction and the geographical areas of restriction) are reasonably necessary for the protection of Buyer's interests under the SPA, including the full benefit of any reputation or goodwill associated with the Business as the Business may exist on and after the date hereof, and are not unduly restrictive upon [Post]." Post Agreement ¶ 1(c).

4

17.    Post acknowledged in his Agreement that "in the event of an alleged breach or violation by [Post] of [his non-compete covenant], the Term shall be tolled until such breach or violation has been duly cured." Post Agreement ¶ 2.  The Term was set to expire no earlier than November 16, 2008.

18.    Post "agree[d] and acknowledge[d]" that "[i]n the event of the breach . . . by [Post] of any of the provisions of Section 1, . . . damages would be inadequate and insufficient." Post Agreement ¶ 2.  Post agreed that injunctive or other equitable relief would be appropriate if he violated the Post Agreement.  *Id.*  Post agreed that such relief would be appropriate "without the necessity of proof of actual damage."  *Id.*

19.    The Post Agreement provided that it could be "amended or waived only with the prior written consent of [Office Depot], [OCS], and [Post].  Post Agreement ¶ 6.  The parties have never given such prior written consent.

A.    **Post's Violation of Post Agreement**

20.    On or about January 19, 2007, Office Depot learned that Post, less than a year after signing the Post Agreement and receiving over a million dollars in consideration thereof, may have gone to work for W.B. Mason Company, Inc. ("W.B. Mason") in violation of the Post Agreement.

21.    W.B. Mason was a direct competitor of Allied, and is a direct competitor of Office Depot, in the market for office products and services.

22.    Office Depot sent Post a letter dated January 19, 2007, advising Post of his obligations under the Post Agreement, and asking that Post confirm whether he had become employed by or was working for W.B. Mason in violation of the Post Agreement.

23.    Post did not respond to the January 19, 2007 letter.

24.    On February 20, 2007, Office Depot received a notice from W.B. Mason

5

advising that W.B. Mason had hired Post.

25.    In becoming employed by W.B. Mason, Post violated Section 1(a) of the Post Agreement, which precludes him from "directly or indirectly own[ing] any interest in, manag[ing], control[ling], participat[ing] in, consult[ing] with, render[ing] services for, or in any manner engage[ing] in any business in New York, New Jersey, Connecticut, Pennsylvania or California on behalf of or in concert with" competing companies.

## AS AND FOR A FIRST CAUSE OF ACTION
### Breach of Contract

26.    Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

27.    Plaintiffs and Post entered into a valid, binding, and enforceable contract – the Post Agreement.

28.    The Post Agreement and the restrictive covenants it contains constitute valid, binding, and enforceable contractual obligations between Post and plaintiffs.

29.    Post unjustifiably has breached and continues to breach the terms of the Post Agreement and the restrictive covenants therein by accepting employment at W.B. Mason, a direct competitor of Allied and of Office Depot in the office supplies market.

30.    Post's breach of the Post Agreement was wilful, material, and central to the Agreement.  Plaintiffs would not have entered into the Post Agreement if Post had refused to agree to the restrictive covenants therein.

31.    Post's breach of the Post Agreement deprived plaintiffs of the benefit of their bargain and substantially defeated the purpose of the Post Agreement.

32.    As a direct, proximate, and foreseeable result of Post's breach of the Post Agreement and the covenants therein, plaintiffs have suffered substantial damages, and are

6

entitled, without limitation, to such damages, consequential damages, and/or restituionary

damages, as well as attorneys' fees, costs, and other expenses necessary to prosecute this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### Injunction

33.    Plaintiffs repeat and re-allege the allegations of the preceding paragraphs

as if fully set forth herein.

34.    Plaintiffs and Post entered into a valid, binding, and enforceable contract –

the Post Agreement.

35.    The Post Agreement and the restrictive covenants it contains constitute

valid, binding, and enforceable contractual obligations between Post and plaintiffs.

36.    Post unjustifiably has breached and continues to breach the terms of the

Post Agreement and the restrictive covenants therein by accepting employment at W.B. Mason, a

direct competitor of Allied and of Office Depot in the office supplies market.

37.    Post's breach of the Post Agreement was wilful, material, and central to

the Agreement.  Plaintiffs would not have entered into the Post Agreement if Post had refused to

agree to the restrictive covenants therein.

38.    As provided in the Post Agreement, Post is familiar with the trade secrets

of Allied, and with other confidential information, and his services are of special, unique and

extraordinary value.

39.    As provided in the Post Agreement, Post's considerable knowledge,

business contacts and expertise relating to the business of Allied is such that Post's violation of

the Post Agreement deprives Office Depot of the full benefit of the reputation or goodwill

associated with the Allied business.

7

40.    As provided in the Post Agreement, damages are inadequate and insufficient to fully remedy Post's breach of the covenants contained in the Post Agreement, and therefore plaintiffs have no adequate remedy at law.

41.    As a direct and proximate result of Post's breach of the Post Agreement, plaintiffs have been, and will continue to be, irreparably harmed.

42.    Accordingly, plaintiffs are entitled to injunctive relief precluding Post from directly or indirectly working for W.B. Mason or otherwise violating the restrictive covenants contained in the Post Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Office Depot and OCS pray for the following relief:

A.    That the Court enter judgment in favor of plaintiffs against Roger Post in the amount equal to the losses and damages suffered by Office Depot as a result of Post's breach of contract, including but not limited to return of any and all consideration received by Post pursuant to the SPA and any related agreement, and the Post Agreement.

B.    That the Court enter an injunction prohibiting Post from directly or indirectly working for W.B. Mason or otherwise violating the restrictive covenants contained in the Post Agreement.

C.    An award of costs, interest, and attorneys' fees.

D.    Pre-judgment and post-judgment interest.

E.    Such other and further relief as this Court deems just, equitable, and proper.

8

Respectfully submitted,

HODGSON RUSS LLP

S. Robert Schrager
60 East 42nd Street, 37th Floor
New York, New York 10165-0159
Telephone:    (212) 661-3535

WILLIAMS & CONNOLLY LLP
John E. Joiner (*pro hac vice application forthcoming*)
Luba Shur (*pro hac vice application forthcoming*)
725 12th Street, NW
Washington, DC 20005
Telephone:    (202) 434-5000

Attorneys for Plaintiffs Office Depot, Inc. and OCS
Acquisition Corp.

Dated:  March 2, 2007

9

# EXHIBIT A

## NON-COMPETITION, CONFIDENTIALITY AND INVENTIONS AGREEMENT

This NON-COMPETITION, CONFIDENTIALITY AND INVENTIONS AGREEMENT (the "Agreement") is made and entered into as of this 16 of May, 2006, between OCS Acquisition Corp., a Delaware corporation ("New Apple" or the "Company"), and Roger Post ("Covenantor"), and is effective as of the date of the Closing (the "Effective Date"). Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the SPA (as defined below).

### RECITALS

WHEREAS, Covenantor is an employee of AOS Acquisition LLC, a Delaware limited liability company ("Old Apple", and together with New Apple, "Apple") and, pursuant to that certain Stock Purchase Agreement (the "SPA"), by and among Office Depot, Inc., a Delaware corporation ("Buyer") and the other parties listed therein, dated as of the date hereof (the "SPA"), certain business assets and liabilities of Old Apple will be transferred to the Company pursuant to the Reorganization and Buyer (or an affiliate thereof) will purchase and the Stockholders will sell all of the capital stock of New Apple (the "Transaction");

WHEREAS, the business of Old Apple is the business of providing office products, coffee and refreshment supplies and service, computer supplies, printing and print services, office furniture and design, and promotional products directly to business consumers (the "Business");

WHEREAS, following the Closing, the Company and its Affiliates intend to engage in the Business;

WHEREAS, as a condition to its willingness to enter into the SPA and in consideration of Buyer's acquisition for value of all of Covenantor's shares of capital stock of the Company pursuant to the SPA, Buyer has requested that Covenantor shall have executed and delivered this Agreement in favor of Buyer and its Affiliates (including, after the Effective Date, the Company), and Covenantor wishes to enter into this Agreement with Buyer;

WHEREAS, because Covenantor has considerable knowledge, business contacts and expertise relating to the Business, if Covenantor were to compete with Buyer or any of its Affiliates with respect to the Business, Buyer would be deprived of the full benefit of any reputation or goodwill associated with the Business, as the Business may exist on and after the date hereof; and

WHEREAS, the covenants provided herein are material, significant and essential to effecting the transactions contemplated by the SPA, and good and valuable consideration has been transferred from Buyer to Covenantor in exchange for such covenants.

### AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals, the terms and provisions of this Agreement, the SPA and the ancillary agreements and instruments related

thereto, the receipt and sufficiency of such consideration being hereby acknowledged by the parties hereto, the parties hereto agree as follows:

1.    Non-Compete, Non-Solicitation.

(a)    Covenantor acknowledges that during the course of Covenantor's employment with Old Apple he has become familiar with the trade secrets of the Company and its Affiliates and with other confidential information concerning the Company and its Affiliates and its and their business and that Covenantor's services have been and shall continue to be of special, unique and extraordinary value to Buyer and the Company and its other Subsidiaries. Therefore, in consideration of the payments to Covenantor for the sale of the Company and Buyer's offer of employment to Covenantor, Covenantor agrees that, from the Effective Date until the date that is 18 months after the date Covenantor ceases to be employed by Old Apple or Buyer (the "Term"), he shall not directly or indirectly own any interest in, manage, control, participate in, consult with, render services for, or in any manner engage in any business in New York, New Jersey, Connecticut, Pennsylvania or California on behalf of or in concert with (x) any key competitor of the Company that is competitive with the Business, including without limitation the following companies (or any Affiliates of any such companies that is competitive with the Business), each of which are considered to be key competitors of the Company (collectively, the "Competitors"): Staples; Corporate Express; Office Max; P.P.R. and Lyreco; or (y) any other company which engages in a business that is competitive with the Business, including without limitation the following companies: Wal Mart, Target Stores or any internet or other direct mail or direct marketing company engaged in the sale of business or office products, so long as Covenator is directly involved in such competitive business including as a result of managing or supervising employees engaged in the competitive business. Nothing herein shall prohibit Covenantor from being a passive owner of not more than 5% (or such higher amount as agreed to in writing by the Chief Legal Counsel of the Buyer (the "Chief Legal Counsel")) of the outstanding stock of any class of a corporation which is publicly traded, including any Competitor, so long as Covenantor has no active participation in the business of such corporation (whether as director, employee, consultant or otherwise).

(b)    During the Term, Covenantor shall not directly or indirectly through another entity (i) induce or attempt to induce any employee who is a sales associate, sales manager or officer of the Company or any of its Affiliates (a "Relevant Employee") to leave the employ of the Company or such Affiliate, (ii) hire any Relevant Employee who, at the time of such hiring (or for the one year period prior to such hiring), was an employee of the Company or any of its Affiliates, or (iii) wilfully induce or attempt to induce any customer, supplier, licensee, licensor, franchisee or other business relation of the Company or any of its Affiliates to cease doing business with the Company or such Affiliate (including by making any negative statements or communications about the Company or any of its Affiliates) as it relates to the Business; provided, that the provisions of (i) and (ii) above shall not apply to employees of the Company or any of its Affiliates who respond to, or are hired as a result of, a general solicitation of employment.

(c)    If, at the time of enforcement of this Section 1, a court shall hold that the duration, scope or area restrictions stated herein are unreasonable under circumstances then existing, the parties agree that the maximum duration, scope or area reasonable under such

circumstances shall be substituted for the stated duration, scope or area and that the court shall be allowed to revise the restrictions contained herein to cover the maximum period, scope and area permitted by law. Covenantor acknowledges that he has carefully read and considered the provisions of this Section 1 and, having done so, agrees and acknowledges that the covenants of Covenantor contained herein (including but not limited to the time periods of restriction and the geographical areas of restriction) are reasonably necessary for the protection of Buyer's interests under the SPA, including the full benefit of any reputation or goodwill associated with the Business as the Business may exist on and after the date hereof, and are not unduly restrictive upon Covenantor.

      2.    Injunctive Relief. In the event of the breach or a threatened breach by Covenantor of any of the provisions of Section 1, Covenantor agrees and acknowledges that damages would be inadequate and insufficient, and agrees that the Company, in addition and supplementary to other rights and remedies existing in its favor, shall be entitled to obtain temporary and permanent injunctive relief from a court of competent jurisdiction against any threatened or further breach as well as an equitable accounting of all profits or benefits arising from such violation, without posting a bond or other security and without the necessity of proof of actual damage. In addition, in the event of an alleged breach or violation by Covenantor of Section 1, the Term shall be tolled until such breach or violation has been duly cured.

      3.    Confidential Information. Covenantor acknowledges that the information, observations and data obtained by Covenantor while employed by Apple and its Subsidiaries or Buyer in each case concerning the business or affairs of Buyer or any of its Affiliates ("Confidential Information") are the property of Buyer. Therefore, Covenantor agrees that during the Term and thereafter, Covenantor shall not disclose to any unauthorized person or use for Covenantor's own purposes any Confidential Information without the prior written consent of the Chief Legal Counsel, unless and to the extent that the (i) aforementioned matters become generally known to and available for use by the public other than as a result of Covenantor's acts or omissions; (ii) the Confidential Information has been or become published or is now, or in the future, in the public domain without breach of this Agreement by Covenantor; or (iii) the Confidential Information is required by law or court order to be disclosed. Covenantor shall deliver to Buyer as soon as practicable after the date Covenantor ceases to be employed by Buyer or Old Apple, or at any other time Buyer may request, all memoranda, notes, plans, records, reports, computer tapes, printouts and software and other documents and data (and copies thereof) in any form or medium relating to the Confidential Information, Work Product (as defined below) or the business of Buyer which Covenantor may then possess or have under Covenantor's control. For purposes of this Section 3 and Section 4 below, each reference to the business of Buyer includes the business transferred to Buyer by the Company pursuant to the Reorganization, including with respect to the operation of such business prior to the Reorganization.

      4.    Inventions and Patents. Covenantor acknowledges that all inventions, innovations, improvements, developments, methods, designs, analyses, drawings, reports and all similar or related information (whether or not patentable) that relate to Old Apple and its Subsidiaries, Buyer or any of its Affiliates' actual or anticipated business, research and development or existing or future products or services and that were or are conceived, developed or made by Covenantor while employed by Old Apple and its Subsidiaries, or Buyer ("Work

Product") belong to Buyer. Covenantor shall promptly disclose such Work Product to the Chief Legal Counsel and perform all actions reasonably requested by the Chief Legal Counsel to establish and confirm such ownership (including, without limitation, assignments, consents, powers of attorney and other instruments).

    5.  Covenantor's Representations.  Covenantor hereby represents that upon the execution and delivery of this Agreement by Buyer and the Company and by him, this Agreement shall be the valid and binding obligation of Covenantor, enforceable in accordance with its terms. Covenantor hereby acknowledges and represents that Covenantor has had an opportunity to consult with independent legal counsel regarding Covenantor's rights and obligations under this Agreement and that Covenantor fully understands the terms and conditions contained herein.

    6.  Amendment and Waiver.  The provisions of this Agreement may be amended or waived only with the prior written consent of the Buyer, Company and Covenantor, and no course of conduct or failure or delay in enforcing the provisions of this Agreement shall affect the validity, binding effect or enforceability of this Agreement.

    7.  Entire Agreement.  This Agreement constitutes the full and complete understanding and agreement of the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous understandings and agreements with respect to the subject matter hereof.

    8.  Notices.  Any notice provided for in this Agreement shall be in writing and shall be either personally delivered, or mailed by first class mail, return receipt requested, to the recipient at the address below indicated:

    NOTICES TO COVENANTOR:

    Roger Post
    22 Mallard Drive
    Hackettstown, NJ 07840

    NOTICES TO THE COMPANY:

    OCS Acquisition Corp.
    c/o Office Depot, Inc.
    2200 Old Germantown Road
    Delray Beach, FL 33445
    Attention:  Chief Legal Counsel

or such other address or to the attention of such other person as the recipient party shall have specified by prior written notice to the sending party. Any notice under this Agreement shall be deemed to have been given when so delivered or mailed.

9. <u>Governing Law; Forum</u>. This Agreement and the legal relations between the parties hereto shall be governed by and construed in accordance with the laws of the State of New York without giving effect to any conflicts or choice of law provisions of such State. Each of the parties hereto agrees that all actions or proceedings arising out of or in connection with this Agreement, or for recognition and enforcement of any judgment arising out of or in connection with this Agreement, shall be tried and determined exclusively in the state or federal courts in the State of New York, and each of the parties hereto hereby irrevocably submits with regard to any such action or proceeding for itself and in respect to its property, generally and unconditionally, to the exclusive jurisdiction of the aforesaid courts. Each of the parties hereto hereby expressly waives any right it may have to assert, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any such action or proceeding: (a) any claim that it is not subject to personal jurisdiction in the aforesaid courts for any reason; (b) that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts; and (c) that (i) any of the aforesaid courts is an inconvenient or inappropriate forum for such action or proceeding, (ii) venue is not proper in any of the aforesaid courts and (iii) this Agreement, or the subject matter hereof, may not be enforced in or by any of the aforesaid courts.

10. <u>Successors and Assigns</u>. This Agreement is intended to bind and inure to the benefit of and be enforceable by Covenantor, the Company and their respective heirs, successors and assigns, except that Covenantor may not assign Covenantor's rights or delegate Covenantor's obligations hereunder without the prior written consent of the Company.

11. <u>Captions</u>. The captions used herein are for ease of reference only and shall not define or limit the provisions hereof.

12. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but of which taken together shall constitute one and the same agreement.

[signature page follows]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year written above, to become effective as of the Effective Date.

COMPANY:

OCS ACQUISITION CORP.

By: _____
    Name: Stephen R. Calkins
    Title:  Secretary


COVENANTOR:

_____
Roger Post

BUYER:

OFFICE DEPOT, INC.

By: _____
    Name: Monica Luechtefeld
    Title:  EVP, Business Development and IT


Reviewed and approved by the Legal Department
as to form and Legality: _____


[signature page to Non-Competition Agreement]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year written above, to become effective as of the Effective Date.

COMPANY:

OCS ACQUISITION CORP.

By:_____
    Name:
    Title:

COVENANTOR:

_____
Roger Post

BUYER:

OFFICE DEPOT, INC.

By:_____
    Name: Monica Luechtefeld
    Title:  EVP, Business Development and IT

[signature page to Non-Competition Agreement]#1026503 v1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
COMMERCIAL DIVISION
-------------------------------------------------------------------x
OFFICE DEPOT, INC., and
OCS ACQUISITION CORP.,

                                        Plaintiffs,

                 - against -                                        Index No.:

ROGER POST

                                        Defendant.

-------------------------------------------------------------------x


## SUMMONS AND COMPLAINT


HODGSON RUSS LLP
*Attorneys for Plaintiffs Office Depot, Inc and*
*OCS Acquisition Corp.*
60 East 42nd Street, 37th Floor
New York, New York 10165
(212) 661-3535


NEW YORK
COUNTY CLERK'S OFFICE

MAR 12 2007

NOT COMPARED