**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
**COMMERCIAL DIVISION**

| | | |
|---|---|---|
| **OFFICE DEPOT, INC.,** | ) | |
| | ) | |
| **OCS ACQUISITION CORP.** | ) | **COMPLAINT** |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **ROGER POST** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiffs Office Depot, Inc. ("Office Depot") and OCS Acquisition Corp. ("OCS"), by their attorneys, Hodgson Russ LLP and Williams & Connolly LLP, state and allege as follows for their Complaint in this action:

### The Parties

1. Plaintiff Office Depot is a Delaware corporation with its principal place of business at 2200 Old Germantown Road, Delray Beach, FL 33445.

2. Plaintiff OCS is a Delaware corporation with its principal place of business at 2200 Old Germantown Road, Delray Beach, FL 33445.

3. Upon information and belief, Defendant Roger Post is a citizen of New Jersey residing at 20 Georgetown Court, Basking Ridge, NJ 07920.

### Jurisdiction and Venue

4. Jurisdiction and venue in this Court are proper. The parties have submitted to the jurisdiction of this Court and have waived any objections based on jurisdiction or venue. The Non-Competition, Confidentiality and Inventions Agreement of May 16, 2006

("Agreement" or "Post Agreement"), between Office Depot, OCS, and Post provides that "[e]ach of the parties hereto agrees that all actions or proceedings arising out of or in connection with this Agreement … shall be tried and determined exclusively in the state or federal courts in the State of New York."  Post Agreement ¶ 9.  The Agreement further provides that: "Each of the parties hereto hereby expressly waives any right it may have to assert, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any such action or proceeding: (a) any claim that it is not subject to personal jurisdiction in the aforesaid courts for any reason; (b) that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts; and (c) that (i) any of the aforesaid courts is an inconvenient or inappropriate forum for such action or proceeding, (ii) venue is not proper in any of the aforesaid courts and (iii) this Agreement, or the subject matter hereof, may not be enforced in or by any of the aforesaid courts."  *Id.*

## **FACTS**

5.    Office Depot is engaged in the sale of office products and services in New York and other locations around the world.

6.    On May 16, 2006, Office Depot acquired the business of AOS Acquisition LLC f/k/a AOS Acquisition Corp. d/b/a Allied Office Products and/or Allied Office Supplies ("Allied") pursuant to a Stock Purchase Agreement ("SPA").  Specifically, pursuant to the SPA, Office Depot acquired 100% of the stock of OCS, an entity specially created to hold the desired assets and liabilities.

7.    Thereafter, also on May 16, 2006, Office Depot and OCS entered into a Non-Competition, Confidentiality and Inventions Agreement with Post, a former shareholder and executive officer of Allied.  A true and correct copy of the Post Agreement is attached hereto as

Exhibit 1.

8.  The Post Agreement was entered between the parties as an express "condition to [Office Depot's] willingness to enter into the SPA and in consideration of [Office Depot's] acquisition for value of all of [Post's] shares of capital stock of [Allied] pursuant to the SPA." Post Agreement at 1.

9.  In fact, Post is identified in Schedule 1.1(g) to the SPA as one of only nine "Key Stockholders."

10. In consideration for Post's entry into the Post Agreement, on May 16, 2006, Office Depot paid Post approximately $900,000 for all his shares of capital stock in Allied.

11. The $900,000 was in addition to $344,254.72 paid by Office Depot to Post (or by Office Depot to Allied for Post) for among other things, severance pay, an annual bonus, and certain Social Security, Medicare, Federal Unemployment Tax, State Unemployment Insurance, and COBRA payments. Post also may have received, or been entitled to receive, additional amounts in connection with Office Depot's acquisition of the business of Allied or Allied's provision of transition and/or consulting services to Office Depot.

12. Post's Agreement contained covenants prohibiting him, among other things, from competing with Office Depot for a specified period of time; from disclosing trade secret and confidential information; from soliciting or inducing sales associates, sales managers or officers to leave the employ of Office Depot or any of its affiliates; and from soliciting or inducing customers to cease doing business with Office Depot or any of its affiliates.

13. Post acknowledged in his Agreement that "because [he] has considerable knowledge, business contacts and expertise relating to [the business in which Allied engaged], if [Post] were to compete with [Office Depot] or any of its Affiliates with respect to [the business

in which Allied engaged], [Office Depot] would be deprived of the full benefit of any reputation or goodwill associated with the [Allied business]." Post Agreement at 1.

14. In his Agreement, Post also "acknowledge[d] that during the course of [his] employment with [Allied] he has become familiar with the trade secrets of the Company … and with other confidential information … and that [his] services have been and shall continue to be of special, unique and extraordinary value to" Office Depot. Post Agreement ¶ 1(a).

15. The Post Agreement provides that "in consideration of the payments to [Post] for the sale of [Allied] and [Office Depot's] offer of employment to [Post], [Post] agree[d] that, from the Effective Date [of May 16, 2006] until the date that is 18 months after the date [Post] cease[d] to be employed by [Allied] or [Office Depot] ("the Term"), he shall not directly or indirectly own any interest in, manage, control, participate in, consult with, render services for, or in any manner engage in any business in New York, New Jersey, Connecticut, Pennsylvania or California on behalf of or in concert with" certain competitors "or any other company which engages in a business that is competitive with the [business of Allied]." Post Agreement ¶ 1(a).

16. Post acknowledged in his Agreement that "he has carefully read and considered the provisions of this Section [prohibiting him from competing with Office Depot]… and, having done so, agrees and acknowledges that the covenants … contained herein (including but not limited to the time periods of restriction and the geographical areas of restriction) are reasonably necessary for the protection of Buyer's interests under the SPA, including the full benefit of any reputation or goodwill associated with the Business as the Business may exist on and after the date hereof, and are not unduly restrictive upon [Post]." Post Agreement ¶ 1(c).

17. Post acknowledged in his Agreement that "in the event of an alleged

breach or violation by [Post] of [his non-compete covenant], the Term shall be tolled until such breach or violation has been duly cured." Post Agreement ¶ 2. The Term was set to expire no earlier than November 16, 2008.

18. Post "agree[d] and acknowledge[d]" that "[i]n the event of the breach . . . by [Post] of any of the provisions of Section 1, . . . damages would be inadequate and insufficient." Post Agreement ¶ 2. Post agreed that injunctive or other equitable relief would be appropriate if he violated the Post Agreement. *Id.* Post agreed that such relief would be appropriate "without the necessity of proof of actual damage." *Id.*

19. The Post Agreement provided that it could be "amended or waived only with the prior written consent of [Office Depot], [OCS], and [Post]. Post Agreement ¶ 6. The parties have never given such prior written consent.

### A.     Post's Violation of Post Agreement

20. On or about January 19, 2007, Office Depot learned that Post, less than a year after signing the Post Agreement and receiving over a million dollars in consideration thereof, may have gone to work for W.B. Mason Company, Inc. ("W.B. Mason") in violation of the Post Agreement.

21. W.B. Mason was a direct competitor of Allied, and is a direct competitor of Office Depot, in the market for office products and services.

22. Office Depot sent Post a letter dated January 19, 2007, advising Post of his obligations under the Post Agreement, and asking that Post confirm whether he had become employed by or was working for W.B. Mason in violation of the Post Agreement.

23. Post did not respond to the January 19, 2007 letter.

24. On February 20, 2007, Office Depot received a notice from W.B. Mason advising that W.B. Mason had hired Post.

25. In becoming employed by W.B. Mason, Post violated Section 1(a) of the Post Agreement, which precludes him from "directly or indirectly own[ing] any interest in, manag[ing], control[ling], participat[ing] in, consult[ing] with, render[ing] services for, or in any manner engage[ing] in any business in New York, New Jersey, Connecticut, Pennsylvania or California on behalf of or in concert with" competing companies.

## AS AND FOR A FIRST CAUSE OF ACTION
### Breach of Contract

26. Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

27. Plaintiffs and Post entered into a valid, binding, and enforceable contract – the Post Agreement.

28. The Post Agreement and the restrictive covenants it contains constitute valid, binding, and enforceable contractual obligations between Post and plaintiffs.

29. Post unjustifiably has breached and continues to breach the terms of the Post Agreement and the restrictive covenants therein by accepting employment at W.B. Mason, a direct competitor of Allied and of Office Depot in the office supplies market.

30. Post's breach of the Post Agreement was wilful, material, and central to the Agreement. Plaintiffs would not have entered into the Post Agreement if Post had refused to agree to the restrictive covenants therein.

31. Post's breach of the Post Agreement deprived plaintiffs of the benefit of their bargain and substantially defeated the purpose of the Post Agreement.

32. As a direct, proximate, and foreseeable result of Post's breach of the Post Agreement and the covenants therein, plaintiffs have suffered substantial damages, and are entitled, without limitation, to such damages, consequential damages, and/or restituionary

damages, as well as attorneys' fees, costs, and other expenses necessary to prosecute this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### Injunction

33. Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

34. Plaintiffs and Post entered into a valid, binding, and enforceable contract – the Post Agreement.

35. The Post Agreement and the restrictive covenants it contains constitute valid, binding, and enforceable contractual obligations between Post and plaintiffs.

36. Post unjustifiably has breached and continues to breach the terms of the Post Agreement and the restrictive covenants therein by accepting employment at W.B. Mason, a direct competitor of Allied and of Office Depot in the office supplies market.

37. Post's breach of the Post Agreement was wilful, material, and central to the Agreement. Plaintiffs would not have entered into the Post Agreement if Post had refused to agree to the restrictive covenants therein.

38. As provided in the Post Agreement, Post is familiar with the trade secrets of Allied, and with other confidential information, and his services are of special, unique and extraordinary value.

39. As provided in the Post Agreement, Post's considerable knowledge, business contacts and expertise relating to the business of Allied is such that Post's violation of the Post Agreement deprives Office Depot of the full benefit of the reputation or goodwill associated with the Allied business.

40. As provided in the Post Agreement, damages are inadequate and insufficient to fully remedy Post's breach of the covenants contained in the Post Agreement, and

7

therefore plaintiffs have no adequate remedy at law.

41. As a direct and proximate result of Post's breach of the Post Agreement, plaintiffs have been, and will continue to be, irreparably harmed.

42. Accordingly, plaintiffs are entitled to injunctive relief precluding Post from directly or indirectly working for W.B. Mason or otherwise violating the restrictive covenants contained in the Post Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Office Depot and OCS pray for the following relief:

A. That the Court enter judgment in favor of plaintiffs against Roger Post in the amount equal to the losses and damages suffered by Office Depot as a result of Post's breach of contract, including but not limited to return of any and all consideration received by Post pursuant to the SPA and any related agreement, and the Post Agreement.

B. That the Court enter an injunction prohibiting Post from directly or indirectly working for W.B. Mason or otherwise violating the restrictive covenants contained in the Post Agreement.

C. An award of costs, interest, and attorneys' fees.

D. Pre-judgment and post-judgment interest.

E. Such other and further relief as this Court deems just, equitable, and proper.

.

Respectfully submitted,

HODGSON RUSS LLP

s/S. Robert Schrager
S. Robert Schrager
60 East 42nd Street, 37th Floor
New York, New York 10165-0159
Telephone:   (212) 661-3535

WILLIAMS & CONNOLLY LLP
John E. Joiner (*pro hac vice application forthcoming*)
Luba Shur (*pro hac vice application forthcoming*)
725 12th Street, NW
Washington, DC 20005
Telephone:   (202) 434-5000

Attorneys for Plaintiffs Office Depot, Inc. and OCS Acquisition Corp.

Dated:  March__, 2007