# NON-COMPETITION, CONFIDENTIALITY AND INVENTIONS AGREEMENT

This NON-COMPETITION, CONFIDENTIALITY AND INVENTIONS AGREEMENT (the "Agreement") is made and entered into as of this 16 of May, 2006, between OCS Acquisition Corp., a Delaware corporation ("New Apple" or the "Company"), and Roger Post ("Covenantor"), and is effective as of the date of the Closing (the "Effective Date"). Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the SPA (as defined below).

## RECITALS

WHEREAS, Covenantor is an employee of AOS Acquisition LLC, a Delaware limited liability company ("Old Apple", and together with New Apple, "Apple") and, pursuant to that certain Stock Purchase Agreement (the "SPA"), by and among Office Depot, Inc., a Delaware corporation ("Buyer") and the other parties listed therein, dated as of the date hereof (the "SPA"), certain business assets and liabilities of Old Apple will be transferred to the Company pursuant to the Reorganization and Buyer (or an affiliate thereof) will purchase and the Stockholders will sell all of the capital stock of New Apple (the "Transaction");

WHEREAS, the business of Old Apple is the business of providing office products, coffee and refreshment supplies and service, computer supplies, printing and print services, office furniture and design, and promotional products directly to business consumers (the "Business");

WHEREAS, following the Closing, the Company and its Affiliates intend to engage in the Business;

WHEREAS, as a condition to its willingness to enter into the SPA and in consideration of Buyer's acquisition for value of all of Covenanter's shares of capital stock of the Company pursuant to the SPA, Buyer has requested that Covenantor shall have executed and delivered this Agreement in favor of Buyer and its Affiliates (including, after the Effective Date, the Company), and Covenantor wishes to enter into this Agreement with Buyer;

WHEREAS, because Covenantor has considerable knowledge, business contacts and expertise relating to the Business, if Covenantor were to compete with Buyer or any of its Affiliates with respect to the Business, Buyer would be deprived of the full benefit of any reputation or goodwill associated with the Business, as the Business may exist on and after the date hereof; and

WHEREAS, the covenants provided herein are material, significant and essential to effecting the transactions contemplated by the SPA, and good and valuable consideration has been transferred from Buyer to Covenantor in exchange for such covenants.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing recitals, the terms and provisions of this Agreement, the SPA and the ancillary agreements and instruments related

#1026503 v1

thereto, the receipt and sufficiency of such consideration being hereby acknowledged by the parties hereto, the parties hereto agree as follows:

    1.    <u>Non-Compete, Non-Solicitation</u>.

    (a)    Covenantor acknowledges that during the course of Covenantor's employment with Old Apple he has become familiar with the trade secrets of the Company and its Affiliates and with other confidential information concerning the Company and its Affiliates and its and their business and that Covenantor's services have been and shall continue to be of special, unique and extraordinary value to Buyer and the Company and its other Subsidiaries. Therefore, in consideration of the payments to Covenantor for the sale of the Company and Buyer's offer of employment to Covenantor, Covenantor agrees that, from the Effective Date until the date that is 18 months after the date Covenantor ceases to be employed by Old Apple or Buyer (the "<u>Term</u>"), he shall not directly or indirectly own any interest in, manage, control, participate in, consult with, render services for, or in any manner engage in any business in New York, New Jersey, Connecticut, Pennsylvania or California on behalf of or in concert with (x) any key competitor of the Company that is competitive with the Business, including without limitation the following companies (or any Affiliates of any such companies that is competitive with the Business), each of which are considered to be key competitors of the Company (collectively, the "<u>Competitors</u>"): Staples; Corporate Express; Office Max; P.P.R. and Lyreco; or (y) any other company which engages in a business that is competitive with the Business, including without limitation the following companies: Wal Mart, Target Stores or any internet or other direct mail or direct marketing company engaged in the sale of business or office products, so long as Covenator is directly involved in such competitive business including as a result of managing or supervising employees engaged in the competitive business. Nothing herein shall prohibit Covenantor from being a passive owner of not more than 5% (or such higher amount as agreed to in writing by the Chief Legal Counsel of the Buyer (the "Chief Legal Counsel")) of the outstanding stock of any class of a corporation which is publicly traded, including any Competitor, so long as Covenantor has no active participation in the business of such corporation (whether as director, employee, consultant or otherwise).

    (b)    During the Term, Covenantor shall not directly or indirectly through another entity (i) induce or attempt to induce any employee who is a sales associate, sales manager or officer of the Company or any of its Affiliates (a "<u>Relevant Employee</u>") to leave the employ of the Company or such Affiliate, (ii) hire any Relevant Employee who, at the time of such hiring (or for the one year period prior to such hiring), was an employee of the Company or any of its Affiliates, or (iii) wilfully induce or attempt to induce any customer, supplier, licensee, licensor, franchisee or other business relation of the Company or any of its Affiliates to cease doing business with the Company or such Affiliate (including by making any negative statements or communications about the Company or any of its Affiliates) as it relates to the Business; provided, that the provisions of (i) and (ii) above shall not apply to employees of the Company or any of its Affiliates who respond to, or are hired as a result of, a general solicitation of employment.

    (c)    If, at the time of enforcement of this Section 1, a court shall hold that the duration, scope or area restrictions stated herein are unreasonable under circumstances then existing, the parties agree that the maximum duration, scope or area reasonable under such

circumstances shall be substituted for the stated duration, scope or area and that the court shall be allowed to revise the restrictions contained herein to cover the maximum period, scope and area permitted by law. Covenantor acknowledges that he has carefully read and considered the provisions of this Section 1 and, having done so, agrees and acknowledges that the covenants of Covenantor contained herein (including but not limited to the time periods of restriction and the geographical areas of restriction) are reasonably necessary for the protection of Buyer's interests under the SPA, including the full benefit of any reputation or goodwill associated with the Business as the Business may exist on and after the date hereof, and are not unduly restrictive upon Covenantor.

2.  Injunctive Relief. In the event of the breach or a threatened breach by Covenantor of any of the provisions of Section 1, Covenantor agrees and acknowledges that damages would be inadequate and insufficient, and agrees that the Company, in addition and supplementary to other rights and remedies existing in its favor, shall be entitled to obtain temporary and permanent injunctive relief from a court of competent jurisdiction against any threatened or further breach as well as an equitable accounting of all profits or benefits arising from such violation, without posting a bond or other security and without the necessity of proof of actual damage. In addition, in the event of an alleged breach or violation by Covenantor of Section 1, the Term shall be tolled until such breach or violation has been duly cured.

3.  Confidential Information. Covenantor acknowledges that the information, observations and data obtained by Covenantor while employed by Apple and its Subsidiaries or Buyer in each case concerning the business or affairs of Buyer or any of its Affiliates ("Confidential Information") are the property of Buyer. Therefore, Covenantor agrees that during the Term and thereafter, Covenantor shall not disclose to any unauthorized person or use for Covenantor's own purposes any Confidential Information without the prior written consent of the Chief Legal Counsel, unless and to the extent that the (i) aforementioned matters become generally known to and available for use by the public other than as a result of Covenantor's acts or omissions; (ii) the Confidential Information has been or become published or is now, or in the future, in the public domain without breach of this Agreement by Covenantor; or (iii) the Confidential Information is required by law or court order to be disclosed. Covenantor shall deliver to Buyer as soon as practicable after the date Covenantor ceases to be employed by Buyer or Old Apple, or at any other time Buyer may request, all memoranda, notes, plans, records, reports, computer tapes, printouts and software and other documents and data (and copies thereof) in any form or medium relating to the Confidential Information, Work Product (as defined below) or the business of Buyer which Covenantor may then possess or have under Covenantor's control. For purposes of this Section 3 and Section 4 below, each reference to the business of Buyer includes the business transferred to Buyer by the Company pursuant to the Reorganization, including with respect to the operation of such business prior to the Reorganization.

4.  Inventions and Patents. Covenantor acknowledges that all inventions, innovations, improvements, developments, methods, designs, analyses, drawings, reports and all similar or related information (whether or not patentable) that relate to Old Apple and its Subsidiaries, Buyer or any of its Affiliates' actual or anticipated business, research and development or existing or future products or services and that were or are conceived, developed or made by Covenantor while employed by Old Apple and its Subsidiaries, or Buyer ("Work

#1026503 v1                                       3

Product") belong to Buyer. Covenantor shall promptly disclose such Work Product to the Chief Legal Counsel and perform all actions reasonably requested by the Chief Legal Counsel to establish and confirm such ownership (including, without limitation, assignments, consents, powers of attorney and other instruments).

5. **Covenantor's Representations.** Covenantor hereby represents that upon the execution and delivery of this Agreement by Buyer and the Company and by him, this Agreement shall be the valid and binding obligation of Covenantor, enforceable in accordance with its terms. Covenantor hereby acknowledges and represents that Covenantor has had an opportunity to consult with independent legal counsel regarding Covenantor's rights and obligations under this Agreement and that Covenantor fully understands the terms and conditions contained herein.

6. **Amendment and Waiver.** The provisions of this Agreement may be amended or waived only with the prior written consent of the Buyer, Company and Covenantor, and no course of conduct or failure or delay in enforcing the provisions of this Agreement shall affect the validity, binding effect or enforceability of this Agreement.

7. **Entire Agreement.** This Agreement constitutes the full and complete understanding and agreement of the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous understandings and agreements with respect to the subject matter hereof.

8. **Notices.** Any notice provided for in this Agreement shall be in writing and shall be either personally delivered, or mailed by first class mail, return receipt requested, to the recipient at the address below indicated:

NOTICES TO COVENANTOR:

Roger Post
22 Mallard Drive
Hackettstown, NJ 07840

NOTICES TO THE COMPANY:

OCS Acquisition Corp.
c/o Office Depot, Inc.
2200 Old Germantown Road
Delray Beach, FL 33445
Attention: Chief Legal Counsel

or such other address or to the attention of such other person as the recipient party shall have specified by prior written notice to the sending party. Any notice under this Agreement shall be deemed to have been given when so delivered or mailed.

#1026503 v1                                4

9. <u>Governing Law; Forum</u>. This Agreement and the legal relations between the parties hereto shall be governed by and construed in accordance with the laws of the State of New York without giving effect to any conflicts or choice of law provisions of such State. Each of the parties hereto agrees that all actions or proceedings arising out of or in connection with this Agreement, or for recognition and enforcement of any judgment arising out of or in connection with this Agreement, shall be tried and determined exclusively in the state or federal courts in the State of New York, and each of the parties hereto hereby irrevocably submits with regard to any such action or proceeding for itself and in respect to its property, generally and unconditionally, to the exclusive jurisdiction of the aforesaid courts. Each of the parties hereto hereby expressly waives any right it may have to assert, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any such action or proceeding: (a) any claim that it is not subject to personal jurisdiction in the aforesaid courts for any reason; (b) that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts; and (c) that (i) any of the aforesaid courts is an inconvenient or inappropriate forum for such action or proceeding, (ii) venue is not proper in any of the aforesaid courts and (iii) this Agreement, or the subject matter hereof, may not be enforced in or by any of the aforesaid courts.

10. <u>Successors and Assigns</u>. This Agreement is intended to bind and inure to the benefit of and be enforceable by Covenantor, the Company and their respective heirs, successors and assigns, except that Covenantor may not assign Covenantor's rights or delegate Covenantor's obligations hereunder without the prior written consent of the Company.

11. <u>Captions</u>. The captions used herein are for ease of reference only and shall not define or limit the provisions hereof.

12. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but of which taken together shall constitute one and the same agreement.

[signature page follows]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year written above, to become effective as of the Effective Date.

COMPANY:

OCS ACQUISITION CORP.

By: _____
Name: Stephen R. Calkins
Title:  Secretary

COVENANTOR:

_____
Roger Post

BUYER:

OFFICE DEPOT, INC.

By: _____
Name: Monica Luechtefeld
Title:  EVP, Business Development and IT

Reviewed and approved by the Legal Department
as to form and legality: _____

[signature page to Non-Competition Agreement]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year written above, to become effective as of the Effective Date.

COMPANY:

OCS ACQUISITION CORP.

By:_____
   Name:
   Title:

COVENANTOR:

_____
Roger Post

BUYER:

OFFICE DEPOT, INC.

By:_____
   Name: Monica Luechtefeld
   Title:  EVP, Business Development and IT