## SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT is entered into as of this 8TH day of February, 2007 (herein the "Effective Date") by and between W.B. Mason Company, Inc. ("WB Mason") and Office Depot, Inc. ("Office Depot") and AOS Acquisition LLC f/k/a AOS Acquisition Corp. d/b/a Allied Office Products and/or Allied Office Supplies ("Allied").

### WITNESSETH:

WHEREAS, as of November 21, 2002, WB Mason and Allied entered into a settlement agreement in certain litigation pending in the Chancery Court of New Jersey involving WB Mason's hiring of employees of Allied who were bound by post-employment covenants;

WHEREAS, Office Depot has represented to WB Mason, and alleged in certain litigation discussed below, that on or about May 16, 2006, Office Depot acquired the business of Allied, including agreements containing certain post-employment restrictive covenants;

WHEREAS, on or about May 18, 2006, WB Mason filed a lawsuit in the United States District Court for the District of New Jersey, captioned *W.B. Mason Company, Inc. v. Office Depot, Inc. et al.*, Civil Action No. 06-2277 (JAP) (the "First Case") in which WB Mason sought, *inter alia*, a declaratory judgment that it was permitted to solicit for employment with WB Mason former Allied employees now employed by Office Depot;

WHEREAS, Office Depot subsequently filed counterclaims against WB Mason in the First Case and filed two other lawsuits in the United States District Court for the District of New Jersey, captioned *Office Depot, Inc. v. Albanesius, et al.*, C.A. No. 3:06-cv-03805 (JAP-TJB) and *Office Depot, Inc. v. Sokolik*, C.A. No. 3:06-cv-03806 (JAP-TJB) (these two actions, together with the First Case, are herein referred to as the "Litigation"), against former Allied employees, hired by WB Mason after Office Depot acquired the business of Allied, in which Office Depot

alleged that these employees had signed employment agreements containing post-employment restrictive covenants; and

WHEREAS, Office Depot and WB Mason, in order to avoid further litigation, costs, and inconvenience, desire to resolve their disputes amicably so as to settle all claims arising from the subject matter set forth in the Litigation without any admission of fault, liability, or wrongdoing by either party, and to establish a protocol and procedure for handling and avoiding any disputes that might arise in the future regarding hiring by WB Mason of former Allied employees.

NOW THEREFORE, in consideration of the obligations set forth herein, as well as other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

## I. DISCONTINUANCE OF THE LITIGATION

As set forth in Paragraph VI herein, WB Mason's, Office Depot's, and Allied's legal counsel, as well as legal counsel for the individual defendants, shall execute and file stipulations in customary form dismissing, with prejudice, all claims and counterclaims filed in the Litigation against all parties.

## II. HIRING OF FUTURE EMPLOYEES – NOTIFICATION

If after the Effective Date WB Mason hires an employee who was an employee of Allied when Office Depot acquired the business of Allied, then WB Mason shall, within three (3) business days thereof, notify Office Depot by faxing a written notice of hire to Office Depot's counsel (as set forth below). This notice is referred to as the "WB Mason Notice of Hire" in this Settlement Agreement.

### III. HIRING OF FUTURE EMPLOYEES – NON-SOLICITATION

#### A. PROVISION OF AGREEMENT

During the five (5) business day period following receipt of a WB Mason Notice of Hire, Office Depot shall fax or e-mail in .pdf form to counsel for WB Mason a copy of all agreements by and between the employee who is the subject of the Notice and Allied (or any subsidiary, predecessor, or affiliate of Allied, or any entity purchased by Allied or the assets or business of which were purchased by Allied) or any agreement between such employee and any other person that has been assigned to Allied (or any subsidiary, predecessor, or affiliate of Allied, or any entity purchased by Allied or the assets or business of which were purchased by Allied), which agreement, on its face, contains post-employment restrictive covenants regarding: (a) the employee's ability to compete in a geographic area; (b) the employee's solicitation of customers, and/or (c) the employee's solicitation or recruitment of employees, unless said agreement is already in the possession of WB Mason, in which case WB Mason shall include a copy of said agreement in its Notice of Hire. If Office Depot provides such an agreement to WB Mason within this five (5) business day period, or acknowledges the Agreement as provided by WB Mason, that employee shall be deemed a "Covered Allied Employee" for purposes of this Settlement Agreement and WB Mason shall defer the employee's starting date to a date two (2) weeks after WB Mason's provision of the WB Mason Notice of Hire, though nothing herein shall entitle the Covered Allied Employee to continued employment with Office Depot during this two week period.

If Office Depot fails to provide such an agreement to WB Mason within the five (5) business day period set forth above, that employee may start his or her employment with WB Mason at any time thereafter and shall not be subject to any post-employment restrictive

covenants enforceable by either Allied or Office Depot, except as expressly provided in Section IV of this Settlement Agreement concerning the non-disclosure of trade secrets and confidential or proprietary information.

      **B.**    **RESTRICTIONS ON EMPLOYEES**

Subject to the "Reserved Defenses" discussed below, WB Mason and Office Depot hereby agree that any Covered Allied Employee shall be subject to the following restrictions during his or her work at WB Mason:

    (1)    **Non-solicitation of employees**: If the Covered Allied Employee's agreement contains a provision restricting the Covered Allied Employee from soliciting or recruiting Allied employees for employment, then, for the length of the restriction provided in that agreement or a period of six (6) months from the date that the Covered Allied Employee resigned from Office Depot, whichever period is shortest, the Covered Allied Employee shall not, directly or indirectly, solicit, recruit, or seek to enlist any Office Depot employee for employment at WB Mason, including where an employee initiates the contact with the Covered Allied Employee. Nothing contained herein, however, is to be construed as prohibiting the Covered Allied Employee from discussing matters unrelated to either Office Depot or WB Mason with a current Office Depot employee.

    (2)    **Non-solicitation of customers**: If the Covered Allied Employee's agreement contains a provision restricting competition by the Covered Allied Employee in a geographic area and/or the Covered Allied Employee's solicitation of customers, then for the period of the restriction set forth in such agreement, or for the period

of six (6) months following the date of the Covered Allied Employee's resignation from Office Depot, whichever period is shortest, such Covered Allied Employee shall not, directly or indirectly, solicit or do business with any of the customers on the Covered Allied Employee's "Restricted Customer List."

C.     **RESTRICTED CUSTOMER LIST**

The "Restricted Customer List" for any Covered Allied Employee shall be determined as follows:

(1)     Within seven (7) business days of the receipt by Office Depot of a WB Mason Notice of Hire, Office Depot shall provide to WB Mason's counsel the following:

(a)     A listing in electronic form on an MS Excel spreadsheet showing total sales, broken down by month and customer and ordered by decreasing volume of total sales during that period, to all the customers that were assigned to the Covered Allied Employee during the prior twelve (12) calendar months (the "Customer Sales Report"). The Customer Sales Report shall be provided only to WB Mason's counsel. The Customer Sales Report may be stamped "Confidential" and "Attorney-Eyes Only," shall be maintained as confidential by WB Mason's counsel, and shall not be shown to or provided to anyone at WB Mason, with the sole exception that the Customer Sales Report may be reviewed with the Covered Allied Employee by WB Mason's counsel and solely for the purpose of verifying the accuracy of the Report. The Covered Allied Employee shall not be permitted, nor shall he or she permit any other person, to retain a copy of the Customer Sales Report or to copy or record any information from the

Customer Sales Report. The Customer Sales Report (and all copies thereof) must be returned to counsel for Office Depot within one (1) week of finalization of the Restricted Customer List or failure to finalize the Restricted Customer List within three (3) weeks as set forth in Paragraph III.C.3 herein.

(b) A listing in electronic form on an MS Excel spreadsheet of Office Depot and/or Allied customers (the "Proposed Restricted Customer List") who meet the following criteria:

(i) Each of the customers was assigned to the Covered Allied Employee on the date of the Covered Allied Employee's resignation. For the Proposed Restricted Customer List, the term customer refers to the specific legal entity listed on the Proposed Restricted Customer List that purchased the goods or services from Allied and/or Office Depot.

(ii) Each of the customers bought products from Office Depot and/or Allied at some time during the prior six (6) months; and

(iii) The sales by the Covered Allied Employee to all these customers must meet the following criterion (the "80% Test"):

First, total all the sales made by the Covered Allied Employee during the previous twelve (12) calendar months to all the customers on the Proposed Restricted Customer List.

<ul><li>Second, divide that number by the total sales by the Covered Allied Employee in the prior twelve (12) calendar months on the Customer Sales Report, *i.e.*, the total sales to all of the Covered Allied Employee's assigned customers.</li></ul>

The result of this calculation must be at least 0.8 in order for the Proposed Restricted Customer List to meet the "80% Test." To the extent the calculation exceeds 0.8, it shall do so to the smallest possible extent.

(2) Within one (1) week of the receipt by WB Mason's counsel of the Proposed Restricted Customer List and the Customer Sales Report, WB Mason's counsel shall have the right to strike from the list: (i) customers who are existing customers of WB Mason and who have purchased more than a total of $25,000 of goods from WB Mason in the prior twelve (12) calendar months, as indicated on a listing showing total sales by month by WB Mason to each such customer for the prior twelve (12) calendar months, which shall be provided to counsel for Office Depot contemporaneously with any strike by WB Mason on this ground and returned to counsel for WB Mason within one (1) week of finalization of the Restricted Customer List or failure to finalize the Restricted Customer List within three (3) weeks as set forth in Paragraph III.C.3 herein; (ii) customers who are immediate family members of the Covered Allied Employee (or corporate customers whose primary buyer is an immediate family member of the Covered Allied Employee), immediate family members being defined as the Covered Allied Employee's spouse, siblings, children, parents, and the Covered Allied

Employee's brothers-in-law, sisters-in-law, father-in-law and mother-in-law; and (iii) those customers with respect to which WB Mason has been awarded a contract to be the customer's exclusive vendor of office products as indicated on a contract to be provided to counsel for Office Depot contemporaneously with any strike by WB Mason on this ground and returned to counsel for WB Mason within one (1) week of finalization of the Restricted Customer List or failure to finalize the Restricted Customer List within three (3) weeks as set forth in Paragraph III.C.3 herein. Within one (1) week of such a strike, Office Depot may propose the names of substitute customers who meet the original criteria for the Proposed Restricted Customer List. Likewise, WB Mason may strike the newly-proposed customers on the same grounds as with the original List. WB Mason and Office Depot will continue this process until the list of customers is finalized and the final list shall be deemed the "Restricted Customer List." Notwithstanding this process of strikes, the final Restricted Customer List must meet the 80% Test.

(3)  Within three (3) weeks after the Covered Allied Employee resigned from Office Depot, the parties will agree upon a final "Restricted Customer List." If the parties cannot despite good faith efforts agree upon a final Restricted Customer List within three weeks after the Covered Allied Employee resigned from Office Depot, then no party will be bound by this Settlement Agreement or any provision thereof, and the parties shall be relegated to their respective rights and remedies as if for that specific Covered Allied Employee this Settlement Agreement did not exist.

(4) WB Mason's counsel may provide the Covered Allied Employee with a listing of the customer accounts on that Covered Allied Employee's Restricted Customer List in order to assure compliance with this Settlement Agreement, provided that counsel provides only the names of the customer accounts and no other sales information. The Covered Allied Employee shall not display the Restricted Customer List or disclose the Restricted Customer List or its contents to any other person. Immediately upon the conclusion of the restricted period set forth in Paragraph III.(B)(1) and (2) herein, the Covered Allied Employee shall return all copies of the Restricted Customer List to WB Mason's counsel, which shall return all copies of the Restricted Customer List to Office Depot.

### D. RESERVED DEFENSES

Within five business days after receipt of the agreement referenced in Paragraph III(A) herein, WB Mason may notify Office Depot that there exists a "Reserved Defense" with respect to any Covered Allied Employee. A "Reserved Defense" shall be a defense to enforcement of the post-employment restrictive covenants, available to the Covered Allied Employee, which is based upon language contained in the Covered Allied Employee's employment agreement that expressly releases or modifies the restrictive covenants on conditions expressly set forth therein. There shall be no other Reserved Defenses. In such notice, WB Mason shall reasonably describe the Reserved Defense and notify Office Depot whether WB Mason and/or the Covered Allied Employee intend to rely upon that Reserved Defense to contest the enforceability of the restrictive covenants. Contemporaneous with its provision of such notice, WB Mason shall return to Office Depot all Customer Sales Reports or Proposed Restricted Customer Lists

previously provided by Office Depot for the Covered Allied Employee for which the reserved defense is asserted. If WB Mason sends such a notice to Office Depot, then the protocol set forth in this Settlement Agreement shall not apply and the parties shall be relegated to their respective rights and remedies as if for that specific Covered Allied Employee they had not entered into this Settlement Agreement.

IV.    **HIRING OF FUTURE EMPLOYEES – NON-DISCLOSURE**

All former Allied employees now employed by Office Depot and hired by WB Mason after the Effective Date, as well as those former Allied employees employed by Office Depot and hired by WB Mason after Office Depot acquired the business of Allied but before the Effective Date, shall be subject to the following restrictions, whether or not any such person is or becomes a Covered Allied Employee as defined by this Settlement Agreement:

A.    Each such employee shall be required to return to Office Depot, and to not take upon resignation, any property belonging to Office Depot, including any information concerning Office Depot or Allied's past, current, or prospective accounts or customers (including without limitation pricing information) or any other document or information pertaining to the employee's employment with Office Depot or Allied. Such employee shall also confirm that the employee has erased all such information from any computer or other electronic device to which the employee has access.

B.    Such employee shall be bound by and shall observe those provisions of the employee's written agreement, if any, with or assigned to Allied (or any subsidiary, predecessor, or affiliate of Allied, or any entity purchased by Allied or the assets or business of which were purchased by Allied) or Office Depot that concern the use, disclosure, or dissemination of trade secrets and confidential or proprietary information, and shall be bound by and observe any

common law or other obligations concerning the use, disclosure, or dissemination of Allied's and/ or Office Depot's trade secrets and confidential or proprietary information. WB Mason shall instruct, orally and in writing, each such employee to observe these provisions and obligations during the employee's term of employment with W.B. Mason and shall not take any action to cause such employee to breach these provisions.

    **C.**    Nothing in Paragraphs IV. A and B herein shall be construed to prohibit any Covered Allied Employee from soliciting any customer that is not on the Covered Allied Employee's Restricted Customer List.

    **D.**    The parties expressly agree that nothing in this Settlement Agreement shall be construed or deemed as an admission by any party that such information is or is not "confidential" or a "trade secret" under applicable law.

    **V.**    **EMPLOYEES HIRED BEFORE EFFECTIVE DATE**

    **A.**    The parties agree that all former Allied employees who had agreements containing post-employment restrictive covenants and were hired by WB Mason after the date when Office Depot acquired the business of Allied but before the Effective Date of this Agreement will be deemed "Covered Allied Employees" and handled in the manner, and pursuant to the procedures and requirements of, this Settlement Agreement, and that this Settlement Agreement shall have retroactive effect with respect to such individuals. Office Depot and WB Mason agree that, to the extent they have not done so, they will initiate the procedure for determining a Restricted Customer List for each of these individuals (other than those Covered Allied Employees with respect to which WB Mason has asserted or asserts a Reserved Defense) no later than the Effective Date (meaning that the parties shall have three weeks from the Effective Date to finalize Restricted Customer Lists with respect to such

individuals), and that no party shall claim noncompliance with this Agreement with respect to such individuals for any failure before the Effective Date to adhere to the notification requirements of Section II or Section III.A., C., or D. of this Agreement.

B.  The parties further agree and acknowledge that this Agreement does not waive, impair, or affect in any way, any obligation Office Depot may have to pay any compensation, commission, and/or reimbursement owed to any Office Depot employee who was an employee of Allied when Office Depot acquired the business of Allied, and was thereafter hired by WB Mason, with the sole exception that Office Depot will pay, subject to required withholding, any compensation, commissions, and/or reimbursements, if any are owed, to Glenn Albanesius and Robert Sokolik contemporaneously with the exchange of releases as set forth in Paragraph VI herein. Nothing in this Paragraph V shall be construed or deemed an admission that any compensation, commission, and/or reimbursement is owed by Office Depot to any person.

## VI.  EXCHANGE OF RELEASES

The parties shall execute and exchange mutual Releases in the form annexed hereto as Exhibit "A" and Exhibit "B" upon execution of this Settlement Agreement. Office Depot shall also execute and deliver to each of the defendants in *Office Depot, Inc. v. Albanesius, et al.*, C.A. No. 3:06-cv-03805 (JAP-TJB) or *Office Depot, Inc. v. Sokolik*, C.A. No. 3:06-cv-03806 (JAP-TJB), a release in the form attached as Exhibit C upon (i) receipt of a release in the form attached as Exhibit D from such employee; and (ii) the finalization of the Restricted Customer List with respect to each such employee.

## VII.  NOTICES

Any notice required or permitted to be given pursuant to this Settlement Agreement shall be deemed to have been given when telefaxed, or e-mailed in .pdf form where provided for

herein, to the attorneys at the numbers set forth below, so long as such telefax or e-mail is confirmed by the delivery of a hard copy of the notice by overnight express delivery:

**For Mason:**
Deborah L. Thaxter, Esq.
Nixon Peabody, LLP
100 Summer Street
Boston, Massachusetts 02110
Fax: 617-345-1300

**For Office Depot:**
Stephen R. Calkins, Esq.
Senior Managing Counsel
Office Depot, Inc.
2200 Old Germantown Road
Delray Beach, FL 33445
Fax: 561-438-5231

-and-

Daniel F. Katz, Esq.
Williams & Connolly LLP
725 12th Street, NW
Washington, DC 20005
Fax: 202-434-5029

**For Allied:**
Mark Rogart, Esq.
Vice President, Human Resources and Corporate Counsel
Allied Office Supplies, Inc.
100 Delawanna Avenue
Clifton, New Jersey 07014
Fax:

## VIII. MISCELLANEOUS

**A.** No provision of this Agreement, or any document delivered pursuant thereto, shall be construed against any party or counsel merely because such party or counsel drafted such provision or document.

**B.** Each party shall pay its own costs and attorneys' fees.

    **C.**    Each of the parties has entered into this Agreement freely and voluntarily, with no duress or coercion, after consulting with counsel.

    **D.**    This Agreement represents the entire Agreement between the parties and supersedes all prior negotiations, representations, or agreements between the parties, either written or oral. This Agreement may be amended only by written instrument designated as an amendment to this Agreement and executed by all of the parties hereto.

    **E.**    This Agreement may be executed in counterparts via fax, with the same effect as if the original had been signed by the parties.

    **F.**    The parties agree to keep the negotiations and terms of this Settlement Agreement confidential and to not disclose them to any third parties without the prior written consent of each party to this Settlement Agreement, provided, however, that WB Mason and its counsel may discuss the provisions of this Settlement Agreement with any person formerly employed by Allied whom WB Mason is considering offering employment. This Settlement Agreement shall not be filed or disclosed to any court, tribunal, arbitrator, or agency unless the disclosure relates to the enforcement of its terms or if required or allowed by court order; provided, however, that (i) in the event that the fact or terms of this Agreement are requested, by subpoena or otherwise, in any legal proceeding, the party receiving such request shall provide adequate notice to the other parties in order to allow such parties a reasonable opportunity to assert any objections to such request; and (ii) that the parties use their best efforts to request that any disclosure pursuant to court order be made only under a protective order. The parties agree that nothing herein is an admission by any party and that this Agreement may only be used as evidence in a subsequent proceeding in which a breach of this Agreement is alleged.

WHEREFORE, the parties have executed this Settlement Agreement as an instrument under seal, as of the Effective Date set forth above.

| W.B. MASON COMPANY, INC. | OFFICE DEPOT, INC. |
|---|---|
| By: _____<br>Leo Meehan<br>President | By: _____<br>DAVID C. FANNIN<br>Executive Vice President<br>& General Counsel |

AOS Acquisition LLC f/k/a AOS Acquisition Corp. d/b/a Allied Office Products and/or Allied Office Supplies

By:_____